### MOORE v. McKINNEY.
### No. 13086.

Court of Civil Appeals of Texas. Dallas.
Feb. 1, 1941.

On Rehearing April 19, 1941.

Dissenting Opinion April 23, 1941.

Guthrie & Guthrie, of Dallas, for appellant.

Seale & Thompson, of Nacogdoches, for appellee.

LOONEY, Justice.

Austin Moore, as receiver of Casualty Underwriters, a reciprocal insurance company, sued R. W. McKinney, a former policyholder, to recover an alleged balance due for premiums. McKinney was engaged in the business of contracting for and building public highways. On July 16, 1935, Casualty Underwriters issued to him two one-year policies, one a workmen's compensation policy, the other, public liability insurance; likewise, on July 16, 1936, two similar policies with identical coverages, and, at their expiration on July 16, 1937, issued two identical policies for the succeeding year.

In stating his cause of action, plaintiff alleged, among other things: "That under the foregoing policies, and each of them, a deposit premium was charged the defendant, and, in addition thereto, the defendant was obligated to pay such premiums as were earned, in accordance with the terms of the said policies. (The terms of the policies mentioned nowhere appeared in the pleadings.) That the amounts accruing to the Casualty Underwriters and to Austin Moore, Receiver, as premiums under the foregoing policies, the dates that such amounts had become due and the payments to which the defendant, R. W. McKinney, is entitled as credits are all shown in Exhibit 'A' hereto attached." Also alleged:

"That there is now a balance due for premiums under the foregoing policies in the sum of $5,973.79, with interest thereon at the rate of 6% per annum from August 9, 1938, all of which is more fully shown in Exhibit 'A' hereto attached. That such account is based upon the written contracts aforementioned and the business dealings between the parties. The Exhibit reflects debits for money charged to R. W. McKinney and credits for money paid by R. W. McKinney over the period of time reflected in such Exhibit." Exhibit "A" referred to was an account, supported by the affidavit of plaintiff, made under the provisions of Art. 3736, R.C.S., Vernon's Ann. Civ.St. art. 3736, purportedly containing all debits for premiums and credits covering the three policy periods, revealing a balance, for the recovery of which the suit was brought.

The answer of the defendant was under oath, contained, among other defenses, a general denial, alleging settlements and payments to the Casualty Underwriters of all sums due for premiums accrued or earned under the policies, and that, instead of being indebted to the Underwriters at the inception of the receivership, defendant had overpaid the account $564.80. Defendant further alleged that the accounts between him and Casualty Underwriters were regularly audited by their auditor and, at the end of each policy year, a final audit was made and all amounts shown to be due and owing by defendant for premiums were paid to Underwriters, and that "at no time during all of said period from July 16, 1935, up to and until the receiver was appointed, was any demand of any kind or character made upon your defendant for additional premiums; and that said Casualty Underwriters during and at the end of each policy year accepted the sums which they, by their own audit, showed to be due in full and final satisfaction and payment of the premiums due by your defendant to them under their policies * * *. Further answering, if necessary, this defendant would show that during the last policy year, to-wit, on June 29, 1938, the authorized agent and representative of Casualty Underwriters, W. G. Godwin, made a final audit of the payrolls of your defendant, and accepted for and on behalf of Casualty Underwriters from your defendant all sums due by virtue of said final audit, and took up and cancelled the two policies then in force, * * * on a pro rata basis, and that at such time your defendant paid to Casualty Underwriters all sums then due them for premiums under said policies, leaving on the books of said Company the balance due this defendant by said Company of $564.80, as paid deposit premiums; * * *". Thus it appears that plaintiff based his suit upon an itemized sworn account, composed of debits and credits, covering the three policy periods, showing a balance due, the amount in controversy. The defendant, in effect, pleaded that he had paid all he owed Casualty Underwriters—in fact, had overpaid the account.

At the trial, over defendant's objections, plaintiff was permitted to introduce the account, without offering any evidence as to its truth or justness, other than as shown by his supporting affidavit. After introducing the account, plaintiff rested his cause. The defendant thereupon, under leave of the court, filed a trial amendment, specifically denying under oath that the account was just or true, either in whole or in part. After filing the trial amendment, defendant moved for an instructed verdict, which was overruled, thereupon introduced evidence in support of his plea in settlement and payment, and rested. At this juncture, evidently doubtful as to the status of his case, plaintiff sought to introduce certain documentary evidence, consisting of the monthly pay-roll reports made by the defendant to Casualty Underwriters, and summaries of pay-roll reports made to the Highway Department; the contention of plaintiff being that the proffered evidence sustained the correctness of the account sued upon. Certain minor objections were urged by the defendant to the introduction of the evidence, but it was excluded on the major objection that it was not in rebuttal of any evidence offered by the defendant. Thereupon, the court instructed a verdict and rendered judgment for the defendant, from which plaintiff appealed.

Plaintiff contends, among other things, that neither the truth nor justness of the sworn account sued upon was denied under oath before an announcement for trial, and that the trial amendment, filed by the defendant after plaintiff had introduced the sworn account and rested, came too late, and could not be given the evidentiary effect of destroying plaintiff's prima facie case. On the other hand, the defendant contends that the account sued upon was not in compliance with Art. 3736; furthermore, that his amended original answer was a

sufficient sworn denial of the truth or justness of the account; and that, at all events, his trial amendment destroyed the prima facie evidence feature of the account; and finally having conclusively established by evidence, neither contradicted nor rebutted, that he had paid all premiums earned or accruing under the policies in question, was entitled to judgment; hence, the court did not err in instructing a verdict in his favor.

The controlling statute, Art. 3736, provides among other things that, when an action or defense is a claim "for liquidated money demands based upon written contracts * * *, on which a systematic record of said account has been kept, supported by the affidavit of the party * * * the same shall be taken as prima facie evidence thereof, unless * * *."

■■■ It is obvious, we think, that the account sued upon falls within the category described in the provision of the statute just quoted. The statute clearly contemplates that a claim for liquidated money demands, based upon a contract, may be the subject matter of the sworn account, but we think before such account could be accepted as prima facie evidence, suitable allegations under oath should have been made, setting forth provisions of the contract, and the fact or facts under and by virtue of which it is contended the liquidated money demand arose. In the preliminary statement heretofore given, we set forth all of plaintiff's allegations bearing upon this particular point, and think it obvious that plaintiff failed to set up any provisons of the contract, or to allege any fact or facts showing how the premiums charged in the account accrued. These matters were left to conjecture, which we do not think the court was authorized to indulge, hence do not think plaintiff's sworn allegations brought the account within the meaning of the statute.

■■■ Besides, the account contains a number of entries made out of order, revealing, to that extent at least, that a systematic record of the account had not been kept. The statute contemplates a systematic record of the account. "Systematic," within the meaning of the statute, is an orderly, methodical account of debits and credits, entered in regular sequence. The sworn account contains items aggregating an amount in excess of the sum sued for, that were entered during the year 1939, after the defendant had made a full and final settlement, according to the audit of June 29, 1938. Evidently, these entries were made after the appointment of the receiver.

■■■ Besides, we think the justness of the account sued upon, necessarily, was challenged by the sworn allegations of the defendant's first amended original answer. The pertinent parts of this pleading are set out in our preliminary statement, and are to the effect that, a complete settlement of defendant's account with Casualty Underwriters had been made, and all premiums accruing under the policies had been paid—in fact, overpaid—prior to the appointment of the receiver. We do not think it was necessary, in order to destroy the prima facie effect of the sworn account, that it should have been denied in haec verba; necessarily, if paid in full, it was no longer a just account, and unjust thereafter to sue the defendant upon it. See Hood v. Robertson, Tex.Civ.App., 33 S.W.2d 882, and Magee v. Barnes, Tex.Civ.App., 135 S. W.2d 1038, 1039. In the latter case, Judge Tirey, speaking for the Waco Court, used the following pertinent language; he said: "While the article of the Revised Statutes, Vernon's Ann.Civ.St. art. 3736, with reference to sworn accounts in a sense affects the manner of pleading, in the final analysis it creates merely a rule of evidence to be applied solely to proving open accounts under certain given conditions. * * * The defendant having denied the plaintiff's account in toto under oath, he thereby put the plaintiff to proof of his entire case." However, if it can be correctly said that the sworn allegations of defendant's amended original answer were insufficient under the statute, as a denial of the truth or justness of plaintiff's account, still, we think, the specific denial contained in the trial amendment accomplished that result, and put plaintiff upon proof of the correctness of the account sued upon. As before shown, after plaintiff had introduced the sworn account and rested, by leave of court, the defendant filed his trial amendment. The filing of this pleading under the circumstances was a matter within the discretion of the trial court; but, having been filed under permission, should have been given legal effect and, in our opinion, was sufficient to destroy the account as prima facie evidence, and put plaintiff upon proof of his claim. However, as plaintiff stood upon the case made, and

the court having refused to instruct a verdict for the defendant, he was compelled to introduce evidence in support of his defense of payment.

█ However, if the correctness of the several contentions of the plaintiff be conceded, that is that his sworn account was sufficient under the statute to make out a prima facie case; that defendant's first amended original answer was not an effective denial of the justness or truth of the account sued upon, within the meaning of the statute, and that the belated denial contained in defendant's trial amendment did not destroy plaintiff's prima facie case, yet we do not think it follows that the court erred in refusing to direct a verdict and render judgment in his favor, because it is our opinion that the evidence, which was undisputed and unrebutted, conclusively showed that McKinney paid Casualty Underwriters for all premiums earned under the policies, before the insolvency of Casualty Underwriters or the appointment of the receiver.

Each of the compensation policies provided for the payment of a deposit premium and, in addition, that the assured "* * * shall render over his signature, on or before the tenth day after each of the following dates: August 1st, and the 1st day of every month thereafter during the existence of this insurance, a statement of all remuneration paid during the preceding period to the employees covered by this policy, and will within ten days thereafter pay to the Company a premium based upon such remuneration and computed at the Company's rate or rates respectively applicable thereto." Thus, it appears that the actual premium earned depended upon three elements: (1) The amount of remuneration paid by the employer; (2) the application thereto of the correct premium rate; (3) determined by the risk the employees incurred in the particular classification of employment at which they were engaged. In determining the premium earned in a particular instance, the correct rate, ascertained by correct classification of the employes, as to the degree of hazard involved, applied to the remuneration paid, as revealed in the payroll reports.

Mr. W. G. Godwin was agent and representative of Casualty Underwriters, with full authority to act in regard to all matters pertaining to the defendant's dealings with Underwriters. We think the evidence conclusively establishes that fact. He made monthly audits of defendant's account; also made an audit at the end of each policy year. In order to make a correct audit and determine the amount of premiums earned, Godwin testified that he went upon the job, checked the employes against the pay-roll reports, to ascertain the proper classification. Underwriters having instructed Godwin to cancel the two policies issued July 16, 1937, accordingly they were canceled on June 29, 1938, a few days before the end of the policy period, and, at that time, a final audit was made and a final and full settlement between the defendant and Casualty Underwriters was made, the defendant paying all premiums accrued. The witness being asked, "Every amount that you demanded that Mr. McKinney was due in each and every audit he paid it, did he not?" answered, "Yes sir." Throughout his testimony, the witness repeatedly testified that the defendant paid all sums which could have been due the Casualty Underwriters under the policies, and that no audits of the account were made except by witness. The defendant testified to the same effect, stating that he had paid Casualty Underwriters all he owed them, or could have owed them, for the coverage afforded by these policies. This testimony was neither contradicted nor rebutted, hence we do not think the trial court erred in instructing a verdict and rendering judgment for the defendant.

However, plaintiff contends that the court committed reversible error in excluding the documentary evidence offered by him after the defendant had introduced his evidence and closed. Arts. 2180 and 2181 provide in substance that the party upon whom rests the burden of proof on the whole case shall first introduce his evidence, and that, later, the defendant shall introduce his evidence in reply; and further that, at any time before the conclusion of the argument, the court may permit additional evidence to be offered to supply an omission, where it clearly appears to be necessary to the due determination of justice. So, the question presented is, did the trial court abuse its discretion in rejecting the evidence on the ground that it was not in rebuttal of any evidence offered by the defendant? Obviously, the evidence offered was not in rebuttal, but was for the sole purpose of establishing the correctness of the account

sued upon, the contention of plaintiff being that it would have substantiated the correctness of the account.

After duly considering the case as a whole, we do not think it can be said that the trial court abused its discretion in rejecting the evidence. As heretofore shown, premiums earned under the policies could not, in every instance, be determined alone from the pay-toll reports, because, before the correct premiums earned could be ascertained, the auditor was required to visit the job in person, to ascertain the classification of the employes actually at work on the job. This procedure was followed for practically three years; Godwin, Casualty Underwriters' representative, made monthly audits, and, at the end of each policy year, an audit and settlement was had, it appearing that the defendant paid for all premiums earned according to these audits, and as demanded by Godwin. During the entire period, no complaint was made by Casualty Underwriters that the defendant had not paid all premiums earned under the policies, and it is not charged that collusion existed between Godwin and the defendant, the claim by the receiver being that a mistake was made by Godwin and the defendant in consummating the settlements hereinbefore mentioned.

Therefore we cannot say that the court abused its discretion in rejecting the documentary evidence offered by plaintiff, or that error was committed in directing a verdict and rendering judgment for the defendant; hence the judgment below is affirmed.

Affirmed.

## On Rehearing.

BOND, Chief Justice.

After further reflection on appellant's assignment that the trial court committed reversible error in excluding documentary evidence, highly relevant and pertinent to the issue involved in this suit, we think the action of the court did not rest upon the exercise of its discretion. Trial courts have no discretion in admitting material evidence, when offered in due order, and are seldom, if ever, justified in rejecting such evidence where its introduction will cause no delay or procedural hurt or prejudice to the adverse party. It can safely be said that it is an abuse of discretion for a court to refuse introduction of competent evidence to meet the ends of justice.

Plaintiff's suit was upon an itemized account, based upon the terms of special contracts of insurance, and supported by affidavit in such manner as to make the account a liquidated money demand, which, under certain conditions, is prima facie evidence that the stated account is "just and true, that it is due, and that all just and lawful offsets, payments and credits have been allowed * * *." Art. 3736, R.S., Vernon's Ann.Civ.St. art. 3736. The statute creates a rule of evidence to be applied to proving open accounts, "unless the party resisting such claim shall, before an announcement of ready for trial in said cause, file a written denial, under oath, stating that such account is not just or true, in whole or in part, and if in part only, stating the items and particulars which are unjust; * * *." Plaintiff's pleadings clearly came under the provision of the statute, and no exception was urged in the answer of the defendant. The sworn account constituted not only a claim for liquidated demand arising under written contracts, but, within the purview of the Article, constituted a claim for goods, wares and merchandise. Crowe v. Union Automobile Insurance Co., Tex. Civ.App., 79 S.W.2d 168.

Therefore, relying on the legal rule of civil procedure on the pleadings in review, plaintiff introduced in evidence, with the approval of the trial court, the sworn account, over the objection of the defendant that he (the defendant) had, under oath, "denied owing the plaintiff anything"; whereupon, in view of the ruling of the court, in effect that plaintiff's sworn account established prima facie a liquidated demand as against defendant's answer, plaintiff was led to rest his case.

The defendant, evidently fearful of the sufficiency of his answer to cast the burden of proof on plaintiff to establish the account as a liquidated demand, with leave of the court, led a trial amendment, clarifying what he intended in his answer to deny, but which he did not do, that plaintiff's account was "not just or true, in whole or in part," to break the force of the sworn account establishing prima facie plaintiff's cause of action. The trial court, recognizing the necessity for, and, in the exercise of sound discretion, allowed, over plaintiff's objections and out of due order of pleading, the filing of the amendment. The court then overruled defendant's motion to strike from the records plaintiff's sworn account as evidentiary, and refused an instructed ver-

dict for the defendant, perforce of the trial amendment; whereupon defendant introduced his testimony in an effort to rebut the legal effect of plaintiff's evidence.

On cross-examination of defendant's witnesses and from witnesses of his own, plaintiff established, without objection, the predicate for the introduction of the documentary evidence—of its identity and execution—and then it was, the trial court excluded the proffered documents on the ground merely that such evidence was not in rebuttal of defendant's evidence, therefore not admissible under due order of trial. We think, on further consideration of the point raised, the court was in error.

Art. 2180, R.S. provides: "The party upon whom rests the burden of proof on the whole case under the pleadings, shall be permitted to * * * introduce his evidence." This the plaintiff did by the introduction of his sworn account under the rulings of the court. Then the statute provides that "The adverse party may * * * introduce his evidence." This, the defendant attempted to do. And, further, the statute provides that "The parties shall then be confined to rebutting testimony on each side." The plaintiff was denied this right under the ruling of the court. The documentary evidence offered was in rebuttal, tendered by plaintiff for the purpose of refuting the testimony of the defendant, and establishing the correctness of plaintiff's sworn account, which had been attacked by the defendant. Plaintiff had a right to rebut the testimony of defendant and support his claim with such evidence. The grant of this right did not rest upon the exercise of discretion by the trial court. It was a statutory right. The party holding the affirmative of the issue is only required to make a prima facie case in the opening and may reserve confirmatory proof in support of his case when attacked by the other side, then fortify his case from such attack by rebuttal evidence. The plaintiff having the burden of proof, made out his case in chief, by the introduction of his sworn account, which was recognized by the trial court as evidentiary, sufficient at least to establish prima facie his demand, thus requiring the defendant to introduce his testimony in rebuttal.

If, however, it can be said that plaintiff's pleadings fall within the category of claims on which a systematic record of said account had not been kept, or that it did not establish prima facie a liquidated demand, within the meaning of Art. 3736, as suggested in our original opinion, we think plaintiff was led into the course he pursued by the action of the trial court in overruling defendant's motion for instructed verdict when plaintiff rested his case; and then, too, in permitting the filing of the trial amendment after announcement of ready, and then refusing to strike the claim from the record as evidentiary, and requiring defendant to introduce proof in rebuttal. And further, if it can be said that the court, in excluding the documentary evidence, acted in the exercise of its discretion, such, we think, would be an abuse of power. The documentary evidence excluded was highly material, rebutting defendant's defense, and confirmatory in support of plaintiff's demand. Standing alone such would conclusively establish plaintiff's sworn account, and would have warranted an instructed verdict for the plaintiff. On another trial, the evidence might be different; we therefore sustain plaintiff's motion for rehearing, set aside our judgment affirming the case; reverse and remand the cause.

LOONEY, Justice (dissenting on rehearing).

I think the original decision of the Court was correct and should have been permitted to stand, therefore dissent from the action of the majority in granting plaintiff's motion for rehearing and in reversing and remanding the cause.

A short resume of matters appearing more at length in the original opinion will immediately present the question involved; that is, whether or not the trial court abused its discretion in excluding evidence offered by the plaintiff, not in rebuttal of evidence introduced by the defendant on the issue of payment, but solely for the purpose of proving the correctness of the sworn account, no items of which had been attacked by any evidence introduced by the defendant.

As appears from the original opinion, and as revealed by the record, plaintiff relied upon the sworn account attached to his petition, as furnishing ample proof of his cause of action, and, although controverted by the defendant, was sustained by the court; thus forcing the defendant to put on evidence in support of his plea of settlement and payment, which was conclusively established by the uncontradicted and unimpeached testimony of defendant McKinney and that of Mr. Godwin, the representative of Casualty Under-

262

writers, whose estate is represented by the plaintiff herein.

It was after the defendant put on his evidence and rested, showing that, prior to the appointment of plaintiff as receiver, a full, final and satisfactory settlement was consummated between Casualty Underwriters and the defendant, that the plaintiff, for the first time, attempted to establish his cause of action by evidence other than by the sworn account already in evidence; none of which, in my opinion, was in rebuttal of any evidence introduced by the defendant on the issue of payment.

In passing upon the error, whether or not, of the trial court in rejecting the documentary evidence offered by the plaintiff, that is, whether the court abused its discretion in rejecting the evidence on the idea that it was not in rebuttal, we have the right, as the trial court had, to take into consideration the nature of the case. The receiver was appointed after the consummation of the transactions involved between the interested parties, that is, Casualty Underwriters and Mr. McKinney, and to their entire satisfaction; it remained for the receiver to raise an objection to the settlement had, and this without alleging collusion between Godwin, representative of Casualty Underwriters, and McKinney, or that their monthly and annual settlements, extending over quite three years, were, in any sense, infected with fraud.

As these settlements were binding upon Casualty Underwriters, by the same token they should be held binding upon the receiver, who stands precisely in the shoes of the estate he was appointed to represent, and can enforce only such rights and maintain only such actions, as could be enforced or maintained by Casualty Underwriters. The doctrine, prevalent the country over, is announced in 53 Corpus Juris, pp. 99–101, Sec. 125, as follows: "A receiver has no right to property which does not belong to the individual or cor-

poration over whose estate he was appointed, at the time of the appointment, and where he comes into possession of such property he may transfer it to the real owner. He can take no right or title which was extinguished before his appointment, and where property is conveyed or assigned to him by the party under the court's order, the receiver can claim only such rights as the grantor or assignor could have enforced. A receiver is in no sense a bona fide purchaser, and he can acquire no other, greater, or better interest than the debtor had in the property. To this extent he has been held to stand in the shoes of the debtor; he has the same right which the latter would have had, and can set up no rights against claims which the debtor could not have set up." And, again, at page 326, Sec. 538, the same authority says that: " * * * The receiver cannot repudiate the lawful acts of the estate over which he was appointed, and a completed transaction, not ultra vires, and not infected with fraud so that creditors might impeach it on such grounds, will bind the receiver. * * *."

If the documents excluded had been admitted in evidence, they simply would have tended to establish the correctness of the sworn account, already in evidence, no item of which had been impeached, but would not, in any sense, have answered or rebutted the evidence introduced by the defendant, showing a full, final and satisfactory settlement between Casualty Underwriters and McKinney, of all matters revealed by the sworn account, prior to the appointment of the receiver. As this settlement was binding upon Casualty Underwriters, it is also binding upon the receiver, under the authorities cited; therefore, it is my opinion that, as plaintiff had no cause of action to begin with, the court committed no prejudicial error in the ruling in question, and its judgment, in my opinion, should have been permitted to stand.