## JONES v. HOLLYWOOD STYLE SHOP.

### No. 9202.

Court of Civil Appeals of Texas.
San Antonio.

May 31, 1933.

Rehearing Denied June 28, 1933.

Ingrum, Smith & Morris, of San Antonio, for appellant.

C. M. Wunderman, of San Benito, and Seabury, George & Taylor, of Brownsville, for appellee.

FLY, Chief Justice.

This is a suit filed by appellee against appellant, on a policy of fire insurance given by the appellant on merchandise in Harlingen, Cameron county. Appellant filed its plea of privilege to be sued in Bexar county, where its principal offices were located. The plea of privilege was contested on the ground that appellant had an agent in Harlingen. The plea of privilege was denied by the district court.

The Lloyd's plan of insurance is authorized by chapter 19, articles 5013 to 5023, inclusive, of the Revised Statutes of 1925, together with several amendments thereto (Vernon's Ann. Civ. St. arts. 5013–5023). The plan is evidently one adopted from the well-known and historic Lloyd's of England, and was originally organized, and is still so organized, to permit citizens to engage in certain classes of insurance without involving its underwriters, except to the amount invested by them in the scheme. The "plan" is sui generis in America in the field of insurance. There is no provision in the statute for the issuance of a charter, but it provided that an attorney shall be appointed and he shall, or may, be issued a permit by the commissioners of insurance in Texas to operate, giving the name of the attorney and the location of the principal office of said attorney. Provision is made for service on the attorney or one or more of the underwriters. In this case service was had on Elliott Jones, described as attorney in fact for Lloyd's.

It may be enlightening, as well as interesting, to copy herein a brief history of the origin and objects of the plan in England, as given in Cyclopedia of Law and Procedure, on page 1524, in its effort to illuminate American minds on this novel English plan of insurance. It is as follows:

"What is familiarly known as a 'Lloyd's' contract or policy of insurance, (is) where the insurers are such as individuals and not as a corporate insurance company, and where the liability for loss, under the contract, of the individual underwriters is several and not joint." English L. Dict.

"Origin and history.—In times of William the Third and Queen Anne, when coffeehouses in London were the fashionable places of resort, Lloyd's coffee-house, at the corner of Abchurch Lane, Lombard Street, became the wonted resort of seafaring men, and those that did business with them. There, and subsequently in Pope's Head Alley, and ultimately on the west side of the old Royal Exchange, to which place the coffee-house was successively removed, the underwriters of London congregated, having formed at this centre an association among themselves, and with it a system of agency radiating everywhere. Lloyd's underwriters now meet and carry on their business in subscription rooms over the Royal Exchange, still called Lloyd's. The affairs of the subscribers to these rooms are managed by a committee, chosen from their own number, called Lloyd's committee, and presided over by a chairman. Agents (generally called Lloyd's agents) are appointed by the committee in all the principal ports of the world, whose business it is to forward accounts of all departures from and arrivals at their ports, as well as of losses and other casualties; and, in general, all such information as may be supposed to be of importance in guiding the judgment of the underwriters." Abbott L. Dict. 55.

The unique plan is worthy of the surround-

168

ings and personnel of the convivial frequenters of Lloyd's popular resort in London.

Exception 23, of article 1995, Revised Statutes, pertinent hereto, is as follows: *"Corporations and Associations.*—Suits against a private corporation, association or joint stock company may be brought in any county in which the cause of action, or a part thereof, arose, or in which such corporation, association or company has an agency or representative, or in which its principal office is situated. * * *"

It is contended by appellant that the above-quoted exception to article 1995 has no application to Lloyd's plan, but that venue as to it is fixed and controlled by the provisions of article 5021, Revised Statutes as amended (Vernon's Ann. Civ. St. art. 5021), being a part of the chapter creating or permitting the operation of Lloyd's plan. That article has no bearing on the question of venue, but merely enumerates the persons connected with the plan who may be served in order to bring Lloyd's into court. It is a statute as to process and service and effect of judgment, and not as to venue. It is neither an amendment of or addition to article 1995. It is provided in subdivision 28, article 1995: "Suits against fire, marine or inland insurance companies may also be commenced in any county in which the insured property was situated." We construe the last words of the quoted sentence to refer to the place where the property was situated when destroyed by fire. But appellant contends that it is not an association or company, but is "Lloyd's," only this and nothing more.

We are of the opinion that the Lloyd's plan is to all intents and purposes covered by the words "insurance companies," in subdivision 28, of the venue statute, and this construction seems to be borne out by a decision rendered by Presiding Judge McClendon of the Commission of Appeals, in the case of Merchants' & Manufacturers' Lloyd's Ins. Exch. v. Southern Trading Co. of Texas, 229 S. W. 312, where he denominates and treats Lloyd's as an association.

The effect of the arguments of appellant would be to have a statutory creation empowered to insure in any and all the counties of Texas, but which could not be sued, no matter where property is situated when destroyed, and no matter where the insured may reside, except where the attorney or one or more of the underwriters may reside. However defective the statute may be on the subject, we cannot conceive that any Legislature ever intended to create, or did create, such an obnoxious and indefensible state of affairs.

There is a provision of the statute looking to a general office, and that would raise the inference that other offices were contemplated, but no reason can be assigned for their creation unless the insured is thereby furnished an easier way in which to place his grievances against the insurer than by following the strange creature of the Legislature to some far distant county.

No complaint has been made through a proposition in this court as to the sufficiency of the controverting affidavit and this court is not called upon to express an opinion on that subject. It would be impossible to frame a controverting affidavit that could meet the contentions of appellant as to venue as applied to Lloyd's of America.

The court rightly held that the venue was in Cameron county, and the judgment is affirmed.