Michael P. GRACE, Appellant,

v.

John W. RAHLFS, d/b/a John W.
Rahlfs Co., Appellee.

No. 6335.

Court of Civil Appeals of Texas,
El Paso.

March 27, 1974.

Rehearing Denied April 24, 1974.

Turpin, Smith, Dyer, Harman & Dawson, Joseph Connally, Odessa, Graves,

Dougherty, Hearon, Moody & Garwood, R. James George, Jr., Austin, for appellant.

Lynch, Chappell, Allday & Aldridge, Randall Lundy, D. Bruce Pope, Midland, for appellee.

## OPINION

WARD, Justice.

This is a suit on a sworn account to recover the balance due to an independent insurance agent for various insurance premiums. The plaintiff, though preserving an objection to the sufficiency of the defendant's counter-affidavit, proceeded with the proof of his case by evidence independent of the aid of Rule 185, Texas Rules of Civil Procedure. Trial was to a jury and based on the 18 special issues submitted, which were all answered favorably to the plaintiff, judgment was rendered that the plaintiff recover on the account in the amount of $41,137.28 and reasonable attorneys' fees in the sum of $14,500.00. The defendant now complains that the plaintiff did not own and could not assert the cause of action, that the improper defendant was sued, that an excessive recovery was permitted on the account, and that attorneys' fees cannot be recovered in this case under the sworn account provisions of Article 2226, Vernon's Tex.Rev.Civ.Stat.Ann. We affirm except for the recovery of attorneys' fees.

The plaintiff, John W. Rahlfs, is an independent insurance agent and broker. For several years, he had procured various types of bonds, and insurance policies covering fire insurance, liability and workmen's compensation for the defendant, Michael P. Grace, and his wife, Corinne Grace. An open account was carried by Rahlfs on his records in the name of Mr. and Mrs. Grace for the costs of the various items as purchased and periodically statements were rendered on the account to them. In December, 1970, Michael Grace approached Rahlfs and asked him to obtain a policy of well control insurance on cer-

tain oil wells which Mr. and Mrs. Grace were going to drill in Eddy County, New Mexico, and which would protect them from liability should any well "blow out." While Rahlfs had the authority to issue homeowner's and automobile insurance as an agent of various insurance companies, he did not represent any insurers on the type of policy which was requested. After inquiries and quotations from various underwriters, this insurance was finally written by J. H. Blades & Co. as the general agent for the various insurers listed in the policy, Lloyds of London being obligated for the majority of the liability. At the request of Mr. Grace, the policy was issued to "Michael P. and/or Corrine Grace," and had a policy limit of One Million Dollars. The policy called for a minimum premium deposit of $17,900.00 before it was effective. This amount was entered by Rahlfs on the Grace open account and the invoice for the amount, together with the policy was then mailed to Mr. Grace. Grace in turn sent Rahlfs a check, payable to John W. Rahlfs Co., in the amount of $18,042.00 which covered the minimum premium deposit and certain other business. The policy covered the period from March 30, 1971, until March 30, 1972, and during this period five oil wells were drilled by the Graces. Under the terms of the policy, periodic drilling reports were to be made by the insured on the wells drilled in order that the premiums could be calculated from the total depths drilled per well. These reports were never furnished nor were any additional premiums ever paid as the drilling continued. No further payments being made, J. H. Blades & Co. demanded that Rahlfs pay for the balance of the policy premiums in accord with the agreement made that Blades would look only to Rahlfs for the payments. In repose to this demand, Rahlfs gave to J. H. Baldes & Co. a cash payment, a written note for $22,500.00 and his oral promise to pay any balance which remained owing. Suit was thereupon filed by Rahlfs on these unpaid

premiums against Mr. Grace. At the trial neither Mr. nor Mrs. Grace appeared for the hearing and very little testimony was offered in their behalf.

Appellant, Grace, first complains that the plaintiff has shown no standing to bring the present action and was not entitled to recover for any of the unpaid insurance premiums as he was neither the insurer nor the assignee of the insurer, nor shown himself to be subrogated to any cause of action which might belong to any of the insurers. The policy of insurance contains a specific disclaimer in favor of J. H. Blades & Co. to the effect that J. H. Blades & Co. is not an assurer and shall not in any way be liable for any loss or claim under the policy. Appellant relies primarily on J. E. Earnest & Co. v. Word, 137 Tex. 16, 152 S.W.2d 325 (Tex.Com. App.1941, opinion adopted), which holds that when an insurance company looks to its agent for the premiums on insurance written by him, the agent may bring the suit, but on the other hand if the agent is not subrogated to the rights of the insurance company, he is not entitled to bring an action in his own name to recover the premium on the policy issued by him. On this interpretation, it is the appellant's position that the appellee must show that he is subrogated to the insurers and not merely to their agent, J. H. Blades & Co.

■ In the case before us, the testimony established without contradiction that the policy in question was a Lloyd's Plan policy; that the plaintiff, Rahlfs, was acting as the agent for the defendant, Michael Grace, when he obtained the policy through J. H. Blades & Co.; and Blades, as the attorney in fact, wrote and issued the "Lloyd's Plan Policy" under its own signature on behalf of and as agent for three named insurers, an unnamed group of American insurers whose names were on file, and an unnamed group of British insurers known collectively as "Lloyds of London"; that Blades could only deal with an agent such as Rahlfs and not with the

insured; and that Blades could only look to Rahlfs for the payment of all premiums. Under a Lloyd's Plan, the attorney in fact determines what risks the underwriter shall assume, together with the premium to be paid therefor, and is in effect the chief executive and managing agent of the enterprise, and has almost unlimited power in that regard. He executes the policies, collects the premiums, keeps the accounts of the business and expenses, adjusts losses, and prosecutes and defends suits growing out of the business. 46 C.J.S. Insurance § 1415. Lloyd's Plan insurance is governed by Chapter 18 of the Texas Insurance Code, V.A.T.S. The attorney in fact is recognized by Art. 18.02 of the Code, and in Art. 18.17, Tex.Ins.Code Ann., it is provided that any action on the policy may be brought against the attorney in fact alone, and any judgment on the insurance contract against the attorney in fact is a judgment against each and all of the underwriters as their several liability may appear in the contract of liability. Regardless of certain language used in the Word case, supra, Blades for all practical purposes took the place of the insurers and had the cause of action on the premiums against the appellant to which the appellee could become subrogated. It is our opinion that the appellee had both pled and proven sufficient facts to be entitled to the right of subrogation.

■ However, aside from the question of subrogation, when Rahlfs as the agent for the appellant undertook to secure the desired insurance and paid or personally contracted to pay for all unpaid premiums, he then had the necessary standing not only to bring the present suit but to recover in full from the appellant, at least on the basis of indemnification. Rozen v. Cohen, 350 Mass. 231, 214 N.E.2d 451 (1966); Aurora Moving and Storage Co. v. King, 159 Colo. 585, 413 P.2d 461 (1966); 20 Appleman, Insurance Law and Practice, § 11271 (1974 Pocket Parts); 44 Am.Jur. 2d, Insurance, Sec. 1932. Appellant's points in these matters are overruled.

■ It is next contended that Corinne Grace is the proper defendant on the cause of action as she was the operator who drilled the five wells. While the New Mexico Oil Conservation Commission records show Corinne Grace as the operator who drilled the well, there is ample testimony in the record that Mr. and Mrs. Grace operated their business as a team. Mr. Grace appeared to be the person in charge at the various well sites. It was he who originally ordered the insurance and who stated that he would be drilling the wells, and it was he who made the initial premium deposit. In early March, 1972, a meeting was held between Mr. Grace and his attorneys, the appellee and employees of J. H. Blades & Co., after Grace had questioned whether any policy had ever been in effect. When he was assured that coverage had been furnished to him, he ordered that the coverage be continued during the drilling of the last well and refused to permit any cancellation of the policy at that time. All of the testimony indicates that the undertaking was at least a community property interest, with all premiums being paid by Mr. Grace. The jury finding was to the effect that Mr. Grace agreed to pay for all of the premiums on the five wells and no attack is made on that issue. The complaint is overruled.

The next series of points are to the effect that the trial Court should have limited recovery on the account in the amount of $25,437.28 rather than entering judgment for $41,137.28, it being contended that the wording of the contract as to the rates is clear and unambiguous and that for each well over 10,000 feet the premium is computed at the rate of $0.7875 per foot for the first 10,000 feet and that between 10,000 feet and 17,500 feet the premium is computed at the rate of $1.18 per foot for the depth over 10,000 feet. The premium

provision of the insurance policy states the following:

"4. SCHEDULE OF DRILLING RATES

Rates hereon are payable on each foot drilled, each well.

|  | AREA II |
|---|---|
| up to 10,000 feet | $0.7875 |
| 10,000 feet to 17,500 | $1.1800" |

The appellee contends that the clear meaning of the above is that the various footage ranges, coming after "each well," indicate how the rate premium for "each well" shall be computed, and that the only fair, reasonable, and common sense construction which can be given is that "each well up to 10,000 feet will be rated at $0.-7875 on each foot drilled," and that "each well between 10,000 feet and 17,500 feet will be rated at $1.18 on each foot drilled." However, on the alternative basis that there was an ambiguity, the appellee offered and the trial Court permitted the introduction of evidence by the Blades' underwriter that the rate quotation which he gave to Mr. Rahlfs was at $1.18 a foot times the total depth of any well over 10,000 feet. In turn Mr. Rahlfs testified that he explained this to the appellant who agreed to the rate and asked for the policy. This evidence was undisputed and the jury agreed with Mr. Rahlfs.

We agree with the action taken by the trial Court that a legal ambiguity exists. The policy contains language susceptible of more than one meaning, considered in the light of all the provisions of the document. It is well settled that where language of a written contract is ambiguous in the sense that it is reasonably susceptible of more than one meaning, the intention of the parties may be determined from extrinsic evidence. A question of interpretation has arisen which allows the admission of extrinsic evidence and gives rise to a question of fact as to its meaning. Don Drum Real Estate Company v. Hudson, 465 S.W.2d 409 (Tex.Civ.App., Dallas 1971, no writ). Even though this be a contract of insurance, the same rule is applicable particularly since this involves only the question of the applicable rates. 44 Am.Jur.2d, Insurance, Secs. 2029, 2031. The points on the amount of recovery on the account are overruled.

We sustain the appellant's final points that the trial Court was in error in permitting the recovery of attorneys' fees. If the recovery by the plaintiff is permitted it must be on one of the classes of claims set out in Article 2226. If the theory of recovery is for reimbursement or indemnity, he is clearly without the statute. Trinity Universal Insurance Company v. Ponsford Brothers, 423 S.W.2d 571 (Tex. Sup.1968). If the basis of recovery be subrogation where the plaintiff stands in the place of J. H. Blades & Co., it is not a suit on a sworn account within the meaning of Article 2226, even though it be such an action that could be brought as a sworn account under Rule 185. This restrictive interpretation of the attorney's fee statute was made by the Supreme Court in Meaders v. Biskamp, 159 Tex. 79, 316 S.W.2d 75 (1958). There it was held that in order for a claim to be founded "upon a sworn account or accounts" within the meaning of the statute the account must be one "in which there is a sale upon one side and a purchase upon the other, whereby title to personal property passes from one to the other." Van Zandt v. Fort Worth Press, 359 S.W.2d 893 (Tex.Sup.1962). The statute authorizing the recovery of attorney's fees is penal in character and is strictly construed. In the popular sense, J. H. Blades & Co. sold an item of personal property, a contract of insurance. In the strict sense, however, it entered into a contract of indemnity with the insured protecting him against costs that the insured might incur in getting any of the five oil wells under control should a "blow out" occur. We hold that the action is founded upon a special contract and attorneys' fees are not recoverable. Dolenz v. Employers Casualty Company, 504 S.W.2d 625 (Tex. Civ.App., Fort Worth 1974, no writ); French v. Joseph E. Seagram & Sons, Inc., 439 S.W.2d 448 (Tex.Civ.App., El Paso 1969, writ ref'd n. r. e.).

■ In view of our disposition of the case, the cross-points of the appellee are not reached. The appellant's counter-affidavit was defective being in the form provided before the rule was last amended on January 1, 1971. After the announcement of ready, the trial Court permitted this affidavit to be amended to comply with the new requirements. Authority exists for the trial Court's use of such discretion under similar circumstances. Parham v. Grace, 341 S.W.2d 503 (Tex.Civ.App., Fort Worth 1960, no writ); Moore v. McKinney, 151 S.W.2d 255 (Tex.Civ.App., Dallas 1941, no writ).

We affirm that part of the judgment which granted recovery to the appellee in the sum of $41,137.28. We reverse that part of the judgment below which awarded attorneys' fees to appellee and here render judgment denying all attorneys' fees. Three-fourths of the cost of appeal are adjudged against the appellant, and one-fourth of the cost of the appeal is adjudged against the appellee.

OSBORN, J., not sitting.