**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 92-1808
_____


ROYAL INSURANCE COMPANY OF AMERICA
and
ROYAL LLOYDS OF TEXAS,

Plaintiffs-Appellees,


VERSUS

QUINN-L CAPITAL CORPORATION, et al.,

Defendants-Appellants.


_____

Appeal from the United States District Court
for the Northern District of Texas
_____

(September 27, 1993)

Before WISDOM, DAVIS, and SMITH, Circuit Judges.

JERRY E. SMITH, Circuit Judge:


The facts of this case are set forth in Royal Ins. Co. of Am. v. Quinn-L Capital Corp., 960 F.2d 1286 (5th Cir. 1992) ("Royal I"). Following remand in Royal I, the district court entered final judgment against defendant Quinn-L Capital Corp. ("Quinn-L"), granting summary judgment in favor of plaintiffs Royal Insurance Company of America and Royal Lloyds of Texas (collectively, "Royal") and entering a permanent injunction that barred Quinn-L and the defendant investors from relitigating any of the claims or issues decided in either this declaratory

judgment action or the first declaratory judgment action.

## I.

Quinn-L argues that the federal courts do not have jurisdiction for three reasons. First, Quinn-L contends that the district court did not have ancillary jurisdiction over the affirmative defenses of waiver, estoppel, and negligence. Second, Quinn-L contends that no diversity jurisdiction exists. Third, Quinn-L asserts that the district court had no jurisdiction to grant summary judgment while an appeal was pending before this court.

### A.

In Royal I, we recognized that the district court had ancillary jurisdiction to issue an anti-suit injunction to protect or effectuate its prior judgments. 960 F.2d at 1292. Quinn-L argues that the district court lacked jurisdiction to grant summary judgment on the waiver, estoppel, and negligence claims because those claims are outside the scope of the first declaratory judgment action. Royal contends that we held in the first action that the district court had ancillary jurisdiction over the entire controversy and that this holding is law of the case.

Before addressing the merits of the jurisdictional argument, we must decide whether law of the case principles apply to appeals of preliminary injunctions. We decide that issue here because

2

Royal relies upon the law of the case doctrine in addressing numerous points of error raised by Quinn-L.  Quinn-L argues that the doctrine has no application in preliminary injunction proceedings.

The law of the case doctrine was developed to "maintain consistency and avoid [needless] reconsideration of matters once decided during the course of a single continuing lawsuit."  18 CHARLES A. WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 4478, at 788 (1981).  "These rules do not involve preclusion by final judgment; instead, they regulate judicial affairs before final judgment." Id.  Under this doctrine, we will follow a prior decision of this court without reexamination in a subsequent appeal unless "(i) the evidence on a subsequent trial was substantially different, (ii) controlling authority has since made a contrary decision of the law applicable to such issues, or (iii) the decision was clearly erroneous and would work manifest injustice." North Miss. Communications v. Jones, 951 F.2d 652, 656 (5th Cir.), cert. denied, 113 S. Ct. 184 (1992).  The doctrine extends to those issues "decided by necessary implication as well as those decided explicitly." Dickinson v. Auto Ctr. Mfg. Co., 733 F.2d 1092, 1098 (5th Cir. 1983) (citation, quotation marks, and emphasis omitted).

We disagree with Quinn-L's suggestion that law of the case principles have no application to an interlocutory appeal of the granting of a preliminary injunction.  As in any other interlocutory appeal, our decision constitutes law of the case. 1B JAMES W. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 0.404[4.))7], at II-

3

37 (2d ed. 1993). Obviously, the doctrine extends only to matters actually decided. Id. at II-37 to II-38. As to decisions of law, the interlocutory appeal will establish law of the case.

As to factual determinations, however, an interlocutory appeal of a preliminary injunction often will not establish law of the case. To obtain a preliminary injunction, the movant need only show a substantial likelihood of success on the merits. We review a district court's findings of fact supporting the grant of a preliminary injunction for clear error. Royal I, 960 F.2d at 1297. Because the standard of review for factual determinations on direct appeal is higher than the standard applied during an interlocutory appeal of a preliminary injunction, the interlocutory appeal normally will not establish law of the case on factual matters.

Contrary to Quinn-L's suggestion, however, the reason this result does not obtain is not because law of the case principles are inapplicable. Rather, the lesser standard of review applied during an appeal of a preliminary injunction necessarily means that the factual issues differ from those on direct appeal. Such a difference often will result only from the higher standard of review applied during the direct appeal.

With this background in mind, we now address Royal's contentions that we previously held that the district court had ancillary jurisdiction over the entire controversy and that this alleged holding is law of the case. In Royal I, we held that the district court has "ancillary jurisdiction over the present

4

controversy." 960 F.2d at 1292. Read in context, this means that we held only that the district court had ancillary jurisdiction to issue an anti-suit injunction under the "protect or effectuate its judgments" exception to the Anti-Injunction Act (the "Act"), 28 U.S.C. § 2283 (1988). 960 F.2d at 1299. We also held that the district court should have limited the scope of that injunction to exclude the claims that arose after the first declaratory judgment action. Id.

In other words, we held that the district court had ancillary jurisdiction to issue an injunction but that the Act bars a portion of the injunction. We did not have to decide, and did not decide, the jurisdictional issue as to the claims of waiver, estoppel, and negligence, as Quinn-L obtained a reversal on the merits as to those claims.[1] Here, the jurisdictional issue is squarely presented, and we must decide it.

We conclude that the district court did not have ancillary jurisdiction to address the waiver, estoppel, and negligence claims. As noted above, the district court has ancillary jurisdiction[2] to protect or effectuate its judgments. This jurisdiction extends no further than necessary to achieve that purpose. But "[w]hile . . . the . . . Act is not a grant of

_____

[1] It is uncertain whether it was proper for us to pretermit the jurisdictional issue in Royal I while reversing the preliminary injunction as to the waiver estoppel and negligence claims. Because of our holding today on diversity jurisdiction, we need not address this.

[2] What was referred to formerly as "ancillary jurisdiction" is now included within the category of "supplemental jurisdiction." See Pub. L. No. 101-650, 104 Stat. 5113 (codified at 28 U.S.C.A. § 1367 (West Supp. 1993)). The amendment applies only to actions filed on or after December 1, 1990, so it is inapplicable to the instant case.

jurisdiction, no independent basis of jurisdiction is required for a federal court to entertain an application to enjoin relitigation in state court. The jurisdiction that the federal court had when it entered its original judgment is enough to support its issuance of an injunction." Mooney Aircraft Corp. v. Foster (In re Mooney Aircraft), 730 F.2d 367, 374 (5th Cir. 1984) (citing 17 WRIGHT ET AL., supra, § 4276, at 345 (1978)).

In Mooney, we noted that where a bankruptcy court seeks to enjoin claims that were not encompassed in a prior judgment, no ancillary jurisdiction exists. 730 F.2d at 374. Under Mooney, the district court must have an independent basis for jurisdiction over Quinn-L's waiver, estoppel, and negligence claims, as those claims were not raised in the prior declaratory judgment proceeding and are not barred by that proceeding under res judicata principles.

Thus, we agree with Quinn-L that ancillary jurisdiction extends no further than the scope of the first judgment. The basis for allowing the federal courts to exercise ancillary jurisdiction in issuing anti-suit injunctions is to allow them to protect their prior judgments; where new claims are involved, the policy basis for ancillary jurisdiction disappears. We therefore conclude that ancillary jurisdiction to issue anti-suit injunctions normally will not allow a federal court to exercise jurisdiction over new claims not addressed in the judgment the

6

court is seeking to protect.[3]

---

[3] Of course, if the first action bars the new claims because of res judicata principles, ancillary jurisdiction exists as to those claims.

7

B.

Next, we must decide whether diversity jurisdiction exists in this case.  Royal is an unincorporated association that sells insurance under a so-called "Lloyd's plan."  For purposes of ascertaining whether the federal courts have diversity jurisdiction, an unincorporated association is considered to have the citizenship of its members.  Carden v. Arkoma Assocs., 494 U.S. 185, 195-96 (1990).  This case turns on the question of who constitutes a "member" of a Lloyd's plan insurance association. None of the underwriters is a citizen of Texas, while at least one attorney in fact is a resident.

A Lloyd's plan insurer consists of a group of underwriters who join together to issue insurance through an attorney in fact or other representative.  TEX. INS. CODE ANN. §§ 18.01)02 (West 1981).  Ordinarily, such insurers provide insurance for risks for which American insurance companies otherwise would not issue policies.  ROBERT E. KEETON & ALAN I. WIDISS, INSURANCE LAW § 2.1(a)(1) (West 1988) (practitioner's ed.).  Under the Lloyd's plan, the insured typically obtains insurance from one or more members of the Lloyd's group; each member accepts responsibility for a portion of the risk, and liability among the members is several but not joint.  Jones v. Hollywood Style Shop, 62 S.W.2d 167, 167 (Tex. Civ. App. )) San Antonio 1933, no writ); KEETON & WIDISS, supra, § 2.1(a)(1).  In other words, the individual member is responsible only for the portion of the risk that it chooses to insure.

8

The Lloyd's group underwriters appoint an attorney in fact to act for them under a power of attorney. TEX. INS. CODE ANN. § 18.01-1 (West 1981). The attorney in fact has the power to issue policies of insurance, "authorized by and acting for such underwriters . . . ." Id. The attorney in fact is "in effect the chief executive and managing agent of the enterprise. . . ." Grace v. Rahlfs, 508 S.W.2d 158, 161 (Tex. Civ. App. )) El Paso 1974, writ ref. n.r.e.).

Quinn-L contends that the attorney in fact is akin to a general partner of a general partnership and that the underwriters are akin to limited partners. We do not find the analogy relevant to our inquiry, as the degree of control exercised by an individual over an entity is irrelevant to the question of whether he is a member of the entity. Carden, 494 U.S. at 192.

Analogies to other types of state-created entities likewise are not especially helpful. The only relevant inquiry is the identification of the members of this particular entity. Normally, we should examine an entity's definition of "member." Here, such an inquiry is unnecessary, as the relationship of the attorney in fact to a Lloyd's group is described by statute.

We agree with Royal that the attorney in fact is not a member of a Lloyd's group insurance association; only underwriters are members of the organization. As noted above, the attorney in fact acts as an agent for the Lloyd's group. Grace, 508 S.W.2d at 161. Under Texas law, the attorney in fact must be authorized by the underwriters to execute insurance polices and acts for those

9

underwriters by so doing.  TEX. INS. CODE ANN. § 18.01-1 (West 1981).  Moreover, the attorney acts under powers of attorney from the underwriters, id., who also dictate, in the articles of agreement, where the principal office of all attorneys will be, id. § 18.02.  Thus, for purposes of determining whether diversity jurisdiction exists, we conclude that the members of a Lloyd's group are the underwriters alone.[4]

Because attorneys in fact are not members of Lloyd's plan insurance associations, we look only to the citizenship of the underwriters to determine whether diversity jurisdiction exists. Here, because none of the underwriters is a Texas citizen, complete diversity exists.

### C.

Finally, we must consider Quinn-L's contention that the district court lacked jurisdiction to grant summary judgment while the interlocutory appeal in Royal I was pending.  A district court loses jurisdiction over all matters validly before a court of appeals.  Dayton Indep. Sch. Dist. v. U.S. Mineral Prods. Co., 906 F.2d 1059, 1063 (5th Cir. 1990).  The district court does not have the power to "alter the status of the case as it rests before the Court of Appeals."  Id.  Quinn-L argues that the summary

---

[4] Our conclusion is not altered by the fact that Texas law requires that the Lloyd's group appoint a resident of Texas as an attorney in fact if it wishes to issue insurance policies in Texas.  See TEX. INS. CODE ANN. § 18.02 (West 1981).  Texas could have required one or more underwriters to be a resident of the state but chose only to require the attorney in fact to be a resident.  Texas's election to require an association to employ an agent within the state to conduct the association's business does not make the agent any more or less an agent.

10

judgment determined a matter within our jurisdiction.

This case does not fall within the scope of Dayton, a case in which the district court made a ruling that mooted an interlocutory appeal. In other words, the district court's action interfered with our jurisdiction to decide the issues before us. Here, the district court's continuing jurisdiction during the pending interlocutory appeal did not interfere with our ability to decide the issues presented in Royal I. Accordingly, the district court had jurisdiction to enter summary judgment.

## II.

Quinn-L argues that the declaratory judgment and permanent injunction must be vacated because they violate the Act, which provides as follows: "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283 (1988). The Act is "an absolute prohibition against enjoining state court proceedings unless the injunction falls within one of [the] three specifically defined exceptions." Atlantic Coast Line R.R. v. Brotherhood of Locomotive Eng'rs, 398 U.S. 281, 286 (1970). The Court also has warned that "the exceptions should not be enlarged by loose statutory construction." Id. at 287.

Here, the district court rendered a declaratory judgment on the waiver, negligence, and estoppel claims and enjoined

11

defendants from proceeding therewith in state court. On its face, then, this judgment falls squarely within the "protect or effectuate its judgments" exception to the Act. We have stated, however, that "[i]f an injunction would be barred by § 2283, this should also bar the issuance of a declaratory judgment that would have the same effect as an injunction." Texas Employers' Ins. Ass'n v. Jackson, 862 F.2d 491, 506 (5th Cir. 1988) (en banc) (citation and quotation marks omitted), cert. denied, 490 U.S. 1035 (1989). Quinn-L argues that because we held in Royal I that the Act barred the preliminary injunction as to the waiver, estoppel, and negligence claims, Jackson necessarily bars the declaratory judgment and permanent injunction on those claims.

In Jackson, the plaintiff sought relief under the Longshore and Harbor Workers' Compensation Act (LHWCA) using the normal administrative process. Before that process was complete, he sued his employer's LHWCA insurer in state court, alleging, inter alia, deceptive trade practices, fraud, bad faith, and intentional infliction of emotional distress. The insurer filed a plea in bar asserting LHWCA preemption. The state court denied the petition, and extensive discovery was conducted. Later, the insurer filed a declaratory judgment action in federal court seeking an injunction against prosecution of the state court suit.

The district court granted the injunction on the basis of the "protect or effectuate its judgments" exception to the Act. The panel reversed and barred the grant of injunctive relief but allowed the declaratory judgment to stand. Texas Employers' Ins.

12

Ass'n v. Jackson, 820 F.2d 1406 (5th Cir. 1987). The en banc court held that the declaratory judgment was invalid as well, because it was "plain that the only purpose and effect of TEIA's federal suit was to defeat Jackson's state suit against it and to, in effect, overrule the state trial court's denial of TEIA's plea in bar." 862 F.2d at 491. Expressing our concern over the apparent attempt to interfere with a state proceeding, we observed that "[t]o allow declaratory relief in these circumstances would be to transform section 2283 from a pillar of federalism reflecting the fundamental constitutional independence of the states and their courts, to an anachronistic, minor technicality, easily avoided by mere nomenclature or procedural sleight of hand." Id.

As we noted above, we stated in Jackson that if "an injunction would be barred by § 2283, this should also bar the issuance of a declaratory judgment that would have the same effect as an injunction." 862 F.2d at 506. Our inquiry here then depends upon the resolution of two issues. First, we must decide whether the Act would prevent the federal courts from issuing an injunction under the facts of this case. If it would not, then Jackson does not apply. Second, if an injunction would be barred, we must decide whether Jackson is distinguishable.

To decide whether the Act would bar an injunction on the waiver, estoppel, and negligence claims, we must address a question that is res nova in this circuit. Quinn-L injected these claims into the federal proceedings before it had filed any state

13

court actions on these claims. In other words, Royal filed a declaratory judgment action seeking an anti-suit injunction prior to the commencement of any state proceedings. Before a state court suit is filed, the Act has no application, and a federal court may enjoin parties from ever filing suit in state court. Jackson, 862 F.2d at 507 (citing 17 WRIGHT ET AL., supra, § 4222, at 506-07 (1988)).

A circuit split exists on the question of whether the Act has any application where the injunction is sought before a state suit has been filed but is not issued until after a state suit was filed. Three circuits have adopted the rule that the Act does not apply where the federal suit is filed first. See Barancik v. Investors Funding Corp., 489 F.2d 933, 937 (7th Cir. 1973); National City Lines v. LLC Corp., 687 F.2d 1122, 1127 (8th Cir. 1982); Hyde Park Partners, L.P. v. Connolly, 839 F.2d 837, 842 n.6 (1st Cir. 1988). Two circuits, on the other hand, have held that the Act should be applied to the case as it stands, regardless of the order in which the actions were filed. Roth v. Bank of the Commonwealth, 583 F.2d 527, 533 (6th Cir. 1978), cert. dismissed, 442 U.S. 925 (1979); see also Standard Microsystems Corp. v. Texas Instruments, 916 F.2d 58, 61-62 (2d Cir. 1990) (disapproving of the reasoning in Barancik)).

The leading case holding that the Act does not apply when the federal suit is filed first is Barancik, in which the court reasoned that the Act does not apply because the applicability of the Act should be determined at the time the federal court's

14

injunctive powers are invoked.  489 F.2d at 937.  The court was concerned that otherwise a litigant could defeat a well-founded motion for an anti-suit injunction by filing a suit in state court.  Id.  The thrust of this reasoning is weakened, however, by the fact that a federal district court often issues a temporary restraining order (TRO) against filing a state court suit while it is considering a motion for a preliminary injunction seeking such relief.  Such an action goes a long way to avoid the danger raised by the Barancik court.

The Barancik court felt that using TRO's would encourage the liberal granting of the kind of protective orders that the statute was designed to prevent.  We also disagree with this analysis, which assumes the district court will decide the issue wrongly and that granting a TRO will prejudice the decision on the merits. Such logic proves too much, as no TRO would be justified under this reasoning.  Although the issuance of a TRO should not be automatic and is subject to, inter alia, the requirements of FED. R. CIV. P. 65(b),[5] the TRO is a useful tool where appropriate.

The Barancik court, moreover, held that the Act does not

_____

[5] Rule 65(b) reads in relevant part as follows:

    A temporary restraining order may be granted without written or oral notice to the adverse party or that party's attorney only if (1) it clearly appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition, and (2) the applicant's attorney certifies to the court in writing the efforts, if any, which have been made to give the notice and the reasons supporting the claim that notice should not be required.  Every temporary restraining order granted without notice shall be indorsed with the date and hour of issuance; shall be filed forthwith in the clerk's office and entered of record; shall define the injury and state why it is irreparable and why the order was granted without notice . . . .

apply where the federal suit is filed first. In this class of cases, then, Barancik eviscerates the statutory bar against anti-suit injunctions. The Barancik court also expressed concern that the court might have to take action without notice to the opposing party. We find this reasoning to be questionable as well, as it assumes that district courts will ignore the requirements of rule 65(b).

We subscribe to what we think is the better view )) that the Act applies regardless of when the federal and state suits were filed. The plain language of the statute contains no exception for a situation in which the federal suit was filed first. As the Roth court notes, 583 F.2d at 533, the Supreme Court has held that the statute provides an absolute prohibition on injunctions unless one of the three exceptions applies.

The Court repeatedly has emphasized that those exceptions are exclusive and that federal courts may not craft new ones. Any doubts should be resolved in favor of denying the injunction. Roth, 583 F.2d at 533 (citing Atlantic Coast Line R.R., 398 U.S. at 286-87). Given the Court's consistently narrow interpretation of the Act, the presumption in favor of denying an injunction, and the absence of language in the statute suggesting that its application depends upon the time of filing of the state suit, we think Roth provides the better analysis. We conclude, therefore, that the Act applies whenever a state suit is pending, regardless of when it was filed.

Because the Act applies even when the federal suit is filed

16

first, we now must address Quinn-L's contention that our holding in <u>Jackson</u> mandates reversal here.  Royal argues that because the federal suit was filed first in this case, <u>Jackson</u> is distinguishable and hence is not controlling here.[6]  To resolve this question, we return to policy concerns underlying our decision in <u>Jackson</u>.

At oral argument, the parties characterized <u>Jackson</u> as a new type of abstention.  We agree with this characterization, as no language in the Act or the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202 (1982), specifically commands the result in <u>Jackson</u>.[7]  As we recently recognized, our decision in <u>Jackson</u> was based upon principles of federalism and comity.  <u>Travelers Ins. Co. v. Louisiana Farm Bureau Fed'n</u>, 996 F.2d 774, 776 (5th Cir. 1993).[8]

In <u>Jackson</u>, the federal suit offended principles of comity and federalism because the plaintiff sought an overruling of a state court decision on LHWCA preemption.  862 F.2d at 505.  Here, Royal has not attempted to interfere with the state courts.  Instead, it sued to enforce a prior federal judgment, and Quinn-L

---

[6] We reject Quinn-L's suggestion that Royal is judicially estopped from claiming that <u>Jackson</u> does not apply to the facts of this case.  Royal merely offered a legal <u>opinion</u> regarding <u>Jackson</u>'s application.  As Royal properly argues, a statement of opinion on the law does not create a judicial estoppel. <u>Sturm v. Boker</u>, 150 U.S. 312, 336 (1893).

[7] <u>See</u> ERWIN CHERMERINSKY, FEDERAL JURISDICTION § 12.1, at 593 (1989) ("The term <u>abstention</u> refers to judicially created rules whereby federal courts may not decide some matters before them even though all jurisdictional and justiciability requirements are met.").

[8] <u>See also</u> <u>Garrett v. Hoffman</u>, 441 F. Supp. 1151, 1155-56 (E.D. Pa. 1977) (declaratory judgment should be barred only where judgment would lead to unseemly interference with state court litigation).

injected new state claims into the federal action.  Royal sought relief in federal court nearly six months before the state actions against Royal were filed.  Moreover, significant proceedings took place during that time, including the filing of Royal's original and amended complaints, the filing of Quinn-L's answer, and the district court's consideration and denial of two motions for dismissal based on the lack of jurisdiction.  The only interference results from the potential for a race to judgment.[9]

Where the federal case is filed substantially prior to the state case, and significant proceedings have taken place in the federal case,  we perceive little, if any, threat to our traditions of comity and federalism.  See Moses H. Cone Hosp., 460 U.S. at 21-22 (fact that substantial proceedings have occurred is a relevant factor to consider in deciding whether to abstain).  In fact, by filing a state suit after a federal action has been filed, the state plaintiff can be viewed as attempting to use the state courts to interfere with the jurisdiction of the federal courts.  We agree with Royal that if we were to hold that Jackson applied in this scenario, litigants could use Jackson as a sword, rather than a shield, defeating federal jurisdiction merely by filing a state court action.  Neither Jackson nor the concerns underlying it mandate such a result.

Citing Hawaii Housing Auth. v. Midkiff, 467 U.S. 229, 238

---

[9] A race to judgment often is condoned.  See Moses H. Cone Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 15 (1983) (approving of parallel proceedings in all but exceptional circumstances); PPG Indus. v. Continental Oil Co., 478 F.2d 674, 677 (5th Cir. 1973) (citing Kline v. Burke Constr. Co., 260 U.S. 206, 230 (1922)).

(1984), Quinn-L argues that abstention doctrines apply regardless of when the state suit is filed.  See also Hicks v. Miranda, 422 U.S. 332, 349 (1975).  We find this contention flawed for two reasons.  First, Quinn-L mischaracterizes Midkiff.  There, the Court noted that if substantial proceedings have occurred in federal court, that court need not abstain.  467 U.S. at 238.  In other words, in some cases the date on which the state court suit was filed can make a difference in the application of the abstention doctrine.  Where substantial proceedings have begun, the federal court is allowed to proceed to prevent the state from employing abstention as a means to delay litigation.

Second, we find other types of abstention distinguishable. For example, in the case of Younger[10] abstention, the Court was concerned with federal court interference with a state's ability to function.  By blocking proceedings involving state governments, federal courts could interfere unduly with the state's ability to govern.  These federalism concerns are implicated no matter when the federal and state suits are filed:  A state's ability to conduct proceedings is compromised if the officials conducting those proceedings are involved in discovery in federal court.

In Jackson, on the other hand, the filing of the federal suit demonstrated an attempt to overrule a decision by a state trial court.  Federalism and comity concerns arose only because a litigant attempted to use the federal courts to interfere with ongoing state court proceedings.  Thus, while the time of filing

---

[10] Younger v. Harris, 401 U.S. 37 (1971).

19

of the federal and state suits is irrelevant to the application of the Act, it can be an important consideration in determining whether to abstain under <u>Jackson</u>.

We conclude, however, that federal courts need not abstain from declaratory judgment actions under <u>Jackson</u> where the federal suit is filed substantially prior to any state suits, significant proceedings have taken place in the federal suit, and the federal suit has neither the purpose nor the effect of overturning a previous state court ruling. We recently characterized the rule in <u>Jackson</u> as applying only where "a declaratory defendant has <u>previously</u> filed a cause of action in state court against the declaratory plaintiff." <u>Travelers</u>, 996 F.2d at 776 (emphasis added). Even where the state court suit is filed first, a class of exceptions to the <u>Jackson</u> rule exists. <u>Id.</u> at 776-79. Our decision today, declining to extend the rule to a case in which the federal suit has been the subject of significant proceedings before the state suit is even filed, comports with the policy concerns that prompted our decision in <u>Jackson</u>.[11]

---

[11] The investors also argue that we should not give effect to the federal district court's declaratory judgment under the circumstances of this case, even though the federal court's judgment was rendered first. This is because, the investors argue, the federal court injunction prevented the state court from reaching judgment first.

The district court rendered its summary judgment on December 20, 1990, about 3½ months after the investors filed their state court actions on September 4, 1990. The state court set a tentative trial date for December 10 but, given the complexity of this action, we find it extremely unlikely that the state court could have tried this case and rendered judgment before December 20. We are persuaded, therefore, that the state court would not have entered judgment before the December 20 judgment of the federal district court, even if the federal court's October 30, 1990, injunction had not issued. Accordingly, we need not decide, in this case, whether the possibility that the state trial and judgment would have occurred first could be relevant under other circumstances.

20

Quinn-L next contends that Royal was collaterally estopped from pursuing the second declaratory judgment action because it originally sought to reopen the first declaratory judgment action by filing a motion on January 3, 1990. In the February 28, 1990, order denying the request to reopen the first action, the district court stated the following: "Because this case has been closed and the issues may be litigated in the current state court litigation, the Court DENIES the Motion." Quinn-L argues that this order is determinative with respect to the forum in which the coverage issues are to be decided.

Quinn-L cites New Orleans Pub. Serv. Co. v. Majoue, 802 F.2d 166 (5th Cir. 1986), for that proposition. In Majoue, the defendant removed a state court suit, but the district court remanded it. The defendant later filed a federal declaratory action directed to the state claims. We stated that the original order remanding the case was "res judicata as to the forum." Id. at 168.

We find Majoue distinguishable. A decision to remand to state court may not be appealed, and the district court may not later change its mind. Id. at 167. In Majoue, we relied upon the language of 28 U.S.C. § 1447(d) (1988), which states that a remand order is not reviewable on appeal or otherwise. By filing a declaratory judgment action, the party was attempting to attack the district court's remand order collaterally, an action that is prohibited by statute.

21

Here, on the other hand, the declaratory judgment is not an attempt to attack the prior order collaterally, nor does any statute prohibit the action. Moreover, as Royal argues, Majoue involved an attempt to evade a final judgment. Here there is no final judgment that could have any res judicata effect. We reason, accordingly, that the February 28, 1990, order does not collaterally estop Royal from pursuing this matter.

IV.

We next address Quinn-L's contention that the declaratory judgment and injunction must be vacated because the investors were not parties to the first declaratory judgment and because Royal I is not preclusive on the issue of coverage for negligently caused mental anguish and bodily injury. Royal argues that our decision in Royal I is law of the case as to both issues. Quinn-L disagrees and also argues that our decision was clearly erroneous.[12]

First, Quinn-L claims that the investors are not bound by the first declaratory judgment because they were not in privity with Quinn-L. We disagree with Royal's contention that Royal I establishes as law of the case that the investors were in privity with Quinn-L. As we noted in Royal I, the issue of privity is a question of fact for the trial court. 960 F.2d at 1297. Because

_____

[12] We reject Quinn-L's contention that it did not have a full and fair opportunity to litigate these issues. See Allen v. McCurry, 449 U.S. 90, 95 (1980). Quinn-L had more than adequate representation and ample opportunity to litigate the coverage question.

22

the appeal was interlocutory, we reviewed that finding only for clear error. Id. Here, on the other hand, we review the district court's findings de novo, because that court has rendered summary judgment. As we discussed above, law of the case may not be established on issues of fact where a later appeal involves a more demanding standard of review.

Reviewing the district court's decision de novo, we affirm. There is no material issue of fact as to privity, and the district court properly held that Quinn-L is the investors' virtual representative.

Second, Quinn-L contends that our Royal I decision was clearly erroneous on the question of the scope of the first declaratory judgment. Here, we agree with Royal that our prior holding is law of the case, and we will not set it aside unless it is "clearly erroneous and would work manifest injustice." North Miss. Communications v. Jones, 951 F.2d 652, 656 (5th Cir.), cert. denied, 113 S. Ct. 184 (1992). The res judicata effect of a prior judgment is an issue of law that depends upon an interpretation of the court's opinion. See Chick Kam Choo v. Exxon Corp., 486 U.S. 140, 148 (1988). Our decision in Royal I establishes a finding of law on the scope of the first declaratory judgment. In this situation, an interlocutory appeal establishes law of the case.

Nor do we perceive a reason to revisit Royal I. Quinn-L argues that in Royal I we ignored the requirement that an issue must be actually litigated and decided for issue preclusion to apply. See Jackson, 862 F.2d at 500. Quinn-L contends that the

23

question of whether an accident had occurred was not litigated.

The term "occurrence" is defined in the policies as "an accident . . . which results in bodily injury or property damage . . . ." Quinn-L contends that a finding of no "occurrence" by the district court could mean either (1) that the pleading does not allege an "accident" or (2) that the accident alleged in the pleading is not alleged to have caused either "property damage" or "bodily injury." We agree with Quinn-L's characterization of a finding of "no occurrence": That finding could have either meaning.

Quinn-L goes on to contend that we assumed in Royal I that the first declaratory judgment determined that there had been no accident. Quinn-L argues that this issue was never litigated in the first declaratory judgment action. We disagree.

The district court made separate findings in the first declaratory judgment action, to the effect that the pleadings do not allege an "occurrence," "property damage," or "personal injury" as defined by the policies. If the finding of no occurrence does not constitute a finding that no accident occurred, there would have been no need to enter a separate finding that no property damage or personal injury had occurred. The only reasonable reading of the first declaratory judgment opinion is that the court decided both that there was no accident and that no property damage or personal injury had occurred.[13]

---

[13] See also Royal I, 960 F.2d at 1295 nn. 10, 11 (discussing footnote 3 of partial summary judgment opinion, which acknowledged mental anguish as
(continued...)

24

Moreover, this allegation actually was litigated. In its motion for summary judgment, Royal requested that the court make separate findings that no "occurrence" had been alleged and, additionally, that no "personal injury" or "property damage" had been alleged. Again, if Royal was seeking to litigate only the absence of personal injury or property damage, it would not have needed to ask for both findings.

In addition, Quinn-L's counterclaim placed the issue of whether an "occurrence" was alleged before the district court. The district court obviously felt that the issue was before it, as it concluded that despite the allegation of mental anguish (an injury Royal conceded would be covered), no "occurrence" had been alleged. Finally, Quinn-L contends that we erred in Royal I by ignoring the "actually decided" requirement for collateral estoppel. Quinn-L claims that the issue of coverage for mental anguish was not "actually decided" by the court in the first declaratory judgment action. We disagree. As we explained in Royal I, the district court expressly indicated that any mental anguish was not caused by an occurrence within the meaning of the policy. 960 F.2d at 1295 & nn. 10, 11. The court did actually decide the issue.

---

[13](...continued)
personal injury but still concluded that such injury was not caused by an "occurrence").

25

V.

Essentially for the reasons given by the district court, we agree that no material issue of fact exists as to the claims of waiver, estoppel, and negligence, and we affirm the district court's grant of summary judgment on those claims. We find Quinn-L's claim that the district court should have recused itself to be completely without merit and therefore affirm on that issue.

AFFIRMED.