# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

June 21, 2010

No. 09-30559

Lyle W. Cayce
Clerk

JAMES ALLEN TERRY, JR.

Plaintiff-Appellee

v.

CORNEL H. HUBERT, Warden of Elayn Hunt Correctional Center

Defendant-Appellant

Appeal from the United States District Court
for the Eastern District of Louisiana

Before JONES, Chief Judge, and HIGGINBOTHAM and ELROD, Circuit Judges.

EDITH H. JONES, Chief Judge:

In the aftermath of Hurricane Katrina, Appellee James Allen Terry, Jr., was arrested for looting and detained at Elayn Hunt Correctional Center (EHCC) for approximately seven months. Upon his release, Terry brought a 28 U.S.C. § 1983 action against EHCC's Warden, Cornel Hubert, alleging violations of his First Amendment right to access the courts and Fourteenth Amendment right to due process.[1] The magistrate judge denied the Warden's

---

[1] Terry also sued other defendants and alleged additional constitutional violations, but these other parties and claims were dismissed and are not before us on appeal.

motion for summary judgment, finding issues of fact as to whether the Warden was entitled to qualified immunity. Because the undisputed evidence shows that the Warden neither violated Terry's right of access to the courts nor violated any clearly established law in connection with the detention, he was entitled to immunity from suit. We REVERSE and REMAND for entry of judgment in the Warden's favor.

## I. Background

Less than two weeks after Hurricane Katrina flooded New Orleans, Terry was arrested there and transported to EHCC in St. Gabriel, Louisiana. Three days later, on September 14, 2005, Terry appeared in makeshift quarters at EHCC before Orleans Parish Criminal District Court Judge Raymond Bigelow. Bond was set at $200,000 for charges of Looting and Possession of a Controlled Dangerous Substance While in Possession of a Weapon.[2] Judge Bigelow also set a Rule to Show Cause hearing for October 14, 2005, but this hearing did not occur.

Ordinarily, the state must file an indictment or bill of information within sixty days of arrest if the defendant is being held for a felony. LA. CODE CRIM. PROC. ANN. art. 701.[3] Due to the chaos following Hurricane Katrina, however, the Supreme Court of Louisiana extended the indictment/information deadline in Class II and III felony cases to 5:00 p.m. on January 6, 2006. *See Kimbrough v. Cooper*, 915 So. 2d 344, 345 (La. 2005). This deadline passed

---

[2] Terry's bond was never paid, and he remained in detention.

[3] Article 701 provides, in pertinent part:

"(1)(a)When the defendant is continued in custody subsequent to an arrest, an indictment or information shall be filed . . . within sixty days of the arrest if the defendant is being held for a felony. . . .

Failure to institute prosecution as provided in Subparagraph (1) shall result in release of the defendant if, after contradictory hearing with the district attorney, just cause for the failure is not shown. . . ."

without Terry's indictment, prompting an exchange of letters among Terry, his mother, and Warden Hubert.

Terry first wrote the Warden on January 6, 2006, and requested information as to why he had not been released, despite having not been indicted by the new deadline. On January 11, the Warden replied that he understood Terry's frustration but could not release him until notified by the courts.

On January 26, Terry's mother wrote the Warden to tell him that Terry had not been arraigned or seen an attorney and asked him to provide her with information about how to secure Terry's release. On February 6, the Warden replied that Orleans Parish officials had authority over Terry's charges, arraignment, and release and that he could not release Terry.

On February 4, Terry wrote the Warden again to obtain addresses for Louisiana Governor Blanco and New Orleans Mayor Nagin, and on February 6, Terry filed another written request for the addresses or phone numbers of the courts that could notify the Warden that Terry was to be released. On February 16, the Warden replied that the sheriff's office, rather than the courts, would notify him to release Terry and that Terry should contact inmate counsel about obtaining addresses.

On March 9, Terry wrote the Warden asking that someone look into why the law library had not responded to his two requests for a writ of habeas corpus form and consultation with inmate counsel. The Warden referred Terry's complaint to Deputy Warden Marianna Leger, and Terry saw inmate counsel on or around March 10.

Terry was released on April 4, 2006, pursuant to an order of the Orleans Parish Criminal District Court dismissing all charges. He then filed this § 1983 action against the Warden. Terry contends that the Warden violated his clearly established First Amendment right of access to the courts by denying him access to a law library, access to inmate counsel during his first three months of

detention, access to *competent* inmate counsel thereafter, and basic information concerning whom to contact about his detention. He contends that the Warden's actions were objectively unreasonable in light of Terry's multiple requests for information and complaint that he could not obtain necessary legal forms or see inmate counsel.  Terry also alleges that the Warden violated his Fourteenth Amendment due process right to be free from unlawful incarceration because Terry was detained "without charges."  He argues that the Warden lacked authority to detain Terry but did not investigate Terry's case despite repeated complaints, thus engaging in objectively unreasonable conduct.

Denying qualified immunity and summary judgment to the Warden on grounds that are unclear, at best, the magistrate judge identified "genuine issues of material fact" as to whether the Warden believed "in good faith" that Terry had access to legal forms, inmate counsel, and other necessary information during his detention and whether the Warden believed "in good faith" that he had authority to detain Terry for almost seven months.  The Warden appeals.

## II.  Jurisdiction and Standard of Review

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, — U.S. —, 129 S. Ct. 808, 815 (2009) (citation omitted). The qualified immunity inquiry thus involves two prongs that must be answered affirmatively for an official to face liability: (1) whether the defendant's conduct violated a constitutional right, and (2) whether the defendant's conduct was objectively unreasonable in light of clearly established law at the time of the violation. *Id*. at 816.  A court can begin its assessment with either prong.  *Id*. at 818 (overruling in part *Saucier v. Katz*, 533 U.S. 194, 121 S. Ct. 2151 (2001)).

No. 09-30559

The denial of a motion for summary judgment asserting the defense of qualified immunity is an immediately appealable collateral order "'to the extent that it turns on an issue of law.'" *Manis v. Lawson*, 585 F.3d 839, 842 (5th Cir. 2009). Although this court lacks jurisdiction to review a district court's determination that a genuine factual dispute exists, we may review *de novo* the materiality of disputed facts to the qualified immunity determination. *Id.* at 842–43. The plaintiff's evidentiary assertions—but not mere allegations—are taken as true in the court's evaluation of qualified immunity. *Id.* at 843.

## III. Analysis

*A. First Amendment Claim*

Prisoners have a constitutional right of access to the courts that is "adequate, effective, and meaningful." *Bounds v. United States*, 430 U.S. 817, 822, 97 S. Ct. 1491, 1494 (1977). The right of access to the courts, however, "guarantees no particular methodology but rather the conferral of a capability—the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts." *Lewis v. Casey*, 518 U.S. 343, 354, 116 S. Ct. 2174, 2182 (1996). The Supreme Court has stated:

> [P]rison law libraries and legal assistance programs are not ends in themselves, but only the means for ensuring 'a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts.' Because *Bounds* did not create an abstract, freestanding right to a law library or legal assistance, an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense. . . . [T]he inmate therefore must go one step further and *demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim.*

*Id.* at 351, 116 S. Ct. at 2180 (emphasis added). *See also Brewer v. Wilkinson*, 3 F.3d 816, 821 (5th Cir. 1993) ("the Supreme Court has not extended [the right of access] to encompass more than the ability of an inmate to prepare and

5

transmit a necessary legal document to a court"); *Mann v. Smith*, 796 F.2d 79, 84 (5th Cir. 1986) ("the right of access includes the ability to file a legally sufficient claim") (citation omitted).

Here, Terry had the ability to file a legally sufficient claim challenging his confinement. First, he had access to writing and mailing materials as well as contact information, which he employed to write letters to numerous state officials, including the courts. Terry (as well as his mother) was told by prison officials that the jurisdiction that arrested him governed his release, and he knew he had been arrested in Orleans Parish and appeared before an Orleans Parish judge for a bond hearing. Moreover, within one day of his request to the Warden for help from inmate counsel, Terry's request was satisfied.

Second, Terry knew what to write in order to make out a legally sufficient claim. It is undisputed that a felony detainee who pursued a writ of habeas corpus based upon his prolonged detention could secure release. Terry's letters to the Warden indicate that he knew that he had been held beyond the extended statutory deadline and needed to petition for a writ of habeas corpus. Taking Terry's allegations as true, that he never acquired a habeas *form* from the law library is immaterial because "a court may liberally construe a pro se petitioner's pleading and treat it as a habeas corpus petition." *Davis v. Fechtel*, 150 F.3d 486, 487 (5th Cir. 1998). "This is not a case where 'a complaint [Terry] prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known.'" *Lewis*, 518 U.S. at 351.

In light of these facts, Terry's allegations challenging the adequacy of inmate counsel and the Warden's response to Terry's requests are immaterial, because he was not prejudiced in his ability to file a legally sufficient claim. The Warden is entitled to qualified immunity because he did not violate Terry's right of access to the courts.

*B. Fourteenth Amendment Claim*

Terry's due process claim is premised upon the allegation that he was "never charged with a crime" but was nonetheless detained for almost seven months. The magistrate judge likewise described Terry's detention as occurring "without a court order, without a charge, [and] without a hearing." These characterizations are inaccurate. Three days after his arrest, Terry appeared before an Orleans Parish Criminal District Court judge. He was represented by court-appointed counsel. The court set $100,000 bond on each of two charges.

Although he was not timely released pursuant to the normal operation of state law (Article 701, *supra* n.3), the custody of those charged with crimes was hardly "normal" in the hurricane's devastating aftermath. The operation of Article 701 was suspended for several months by order of the Louisiana Supreme Court. Further, this court can take judicial notice of the damages to facilities, personnel shortages, and lack of coordination plaguing the provision of all public services in the area well into 2006.

The question for immunity purposes thus becomes whether, under these unique conditions, the Warden can be personally liable for Terry's extended detention. To ask this question is to answer it. Though "the very action in question" need not previously have been held unlawful for a constitutional violation to be clearly established, the "unlawfulness must be apparent" and the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034, 3039 (1987). Based on these principles, the Warden's conduct did not violate clearly established law.

The Supreme Court has stated that a detainee "becomes held *pursuant to* [legal] *process*—when, for example, he is bound over by a magistrate . . . ." *Wallace v. Kato*, 549 U.S. 384, 389, 127 S. Ct. 1091, 1096 (2007) (emphasis in original). Terry was unquestionably afforded a bond hearing on his charges, so

7

the Warden could reasonably have concluded that Terry's detention was pursuant to process.

Further, even if the conditions of Terry's detention were otherwise normal, we cannot say that the unlawfulness of the Warden's actions was "apparent" from this circuit's prior decisions. This court has held only that the due process clause is implicated in cases of continued incarceration without an initial appearance, or after charges are dropped, or beyond the term of a court-ordered sentence, or in the face of exculpatory evidence. *See, e.g., Jones v. City of Jackson*, 203 F.3d 875, 880–81 (5th Cir. 2000); *Brooks v. George County, Miss.*, 84 F.3d 157, 166 (5th Cir. 1996); *Douhit v. Jones*, 619 F.2d 527, 532 (5th Cir. 1980); *Sanders v. English*, 950 F.2d 1152, 1159 (5th Cir. 1992). These cases, however, are context-specific. This court has never considered a situation in which a defendant is promptly afforded counsel and a bond hearing, but is then held beyond the deadline for formal indictment.

Finally, this court has never considered, in such a situation, the duty of a prison warden forced to house pretrial detainees within a legal system thrown into disarray by natural disaster. We cannot ignore the implication favoring immunity in the context in which the normal operating rules must yield, because of necessity, to improvisation.

In light of the state of the law and the surrounding circumstances at the time of Terry's incarceration, a due process violation would not have been sufficiently clear to a reasonable public officer, and thus the Warden is entitled to qualified immunity.

## Conclusion

For the foregoing reasons, we REVERSE and REMAND for entry of judgment in favor of the Appellant.