**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

No. 12-31229

United States Court of Appeals
Fifth Circuit

**FILED**
February 27, 2014

Lyle W. Cayce
Clerk

CALVIN RODRIGUE,

        Plaintiff - Appellee

v.

NURSE D. GRAYSON; LIEUTENANT BRAD FIFE,

        Defendants – Appellants

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 3:09-CV-985

Before BENAVIDES, CLEMENT, and GRAVES, Circuit Judges.
PER CURIAM:[*]

        Nurse Dana Grayson and Lieutenant Brad Fife appeal a district court's judgment in favor of Calvin Rodrigue in his civil rights action against them, brought under 42 U.S.C. § 1983. After a bench trial, the district court held that Grayson and Fife violated Rodrigue's Eighth Amendment rights through their deliberate indifference to his medical condition, which led to serious injury when his ruptured appendix went untreated. The court held that

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

neither Grayson nor Fife was entitled to qualified immunity and awarded Rodrigue general compensatory damages, court costs, and interest. We AFFIRM.

## FACTS AND PROCEEDINGS

The relevant facts occurred while Rodrigue was incarcerated in the Morehouse Parish, Louisiana Detention Center ("Morehouse Detention Center"). On May 31, 2008, Rodrigue filed a written request for emergency medical services, complaining of abdominal pain. That evening, Nurse Dana Grayson (a licensed practical nurse employed at Morehouse Detention Center) provided him medicine to relieve his complaints of vomiting. The following day, Rodrigue submitted a sick call request with similar complaints. Nurse Grayson saw Rodrigue the next day.[1] She provided him with medication to relieve his nausea and instructed him to return at the next sick call on June 4 if his symptoms persisted. He submitted another sick call request on June 3, and saw Grayson on June 4. Because his written request specifically mentioned constipation, Grayson gave Rodrigue milk of magnesia. On June 5, Rodrigue submitted another sick call request to Grayson and a separate inmate services request form to Lt. Brad Fife.[2] He stated in both requests that his complaints persisted. In his inmate services request, he stated that he believed the proper treatment to be an enema. On June 6, Grayson provided him an enema, which resulted in a successful bowel movement within thirty minutes.

---

[1] Nurse Grayson was the only medical care provider employed by the Morehouse Detention Center. She conducted regular sick calls three days a week and responded to emergency requests as needed.

[2] Lt. Fife was the security officer for the Morehouse Detention Center. As part of his duties, Fife responded to requests for services such as Rodrigue's June 5 inmate services request. He had the authority to transfer inmates to a hospital for treatment.

On June 10, without having made further sick calls or inmate services requests since June 6, Rodrigue submitted a second emergency medical services request. Nurse Grayson saw him that morning and authorized his transport to E.A. Conway Medical Center. At the hospital, Rodrigue was diagnosed with a ruptured or perforated appendix, which was removed that day. Because sepsis had set in, Rodrigue underwent an extended recovery and two additional surgeries before being released on August 6, 2008.

Rodrigue filed his civil rights complaint on June 15, 2009. In addition to Grayson and Fife, he sued the Morehouse Detention Center, Warden Robert Tappin, Assistant Warden Issaic Brown, Sergeant Clacks, an unnamed insurance company, an unnamed physician, and the Sheriff of Morehouse Parish. On June 24, 2009, and again on October 5, 2009, Rodrigue amended his complaint, dismissing his claims against Morehouse Detention Center and the unnamed doctor. Rodrigue filed his complaints *pro se*, and never asserted claims other than the § 1983 claim based on violations of his Eighth Amendment rights.

On September 8, 2010, the magistrate judge issued a Report and Recommendation that defendants' motion for summary judgment should be granted. She based her conclusion on her finding that "plaintiff has failed to introduce any evidence to establish that the named defendants were aware of a serious risk of harm to the plaintiff, or that they subjectively intended that any harm occur." Although defendants raised qualified immunity as an affirmative defense in their motion for summary judgment, the court felt that "analysis of the qualified immunity defense [wa]s unnecessary" because it had already "determined that the individual defendants did not violate plaintiffs' constitutional rights." After Rodrigue filed objections to the magistrate's report, the district judge dismissed his claims against the unnamed insurance

3

company on December 20, 2010, but denied defendants' motion for summary judgment. The court found that Rodrigue raised genuine issues of material fact as to whether the defendants were deliberately indifferent to his medical needs. The district judge also rejected defendants' qualified immunity argument, stating that "[i]t is clearly established under Supreme Court precedent both that Rodrigue had a federal right to medical care and that Defendants could not be deliberately indifferent to that care." He later transferred the case to another district judge, who presided over the case through trial in February 2012.

On September 28, 2012—about seven months after the bench trial—the district court entered a Memorandum Ruling dismissing Rodrigue's claims against Morehouse Parish, Tubbs, Tapp, Brown, and Clacks, but holding Nurse Grayson and Lt. Fife liable for violating Rodrigue's Eighth Amendment right to be free from cruel and unusual punishment.

As to Grayson, the court found that "despite persistent complaints of extreme abdominal pain and bilious vomiting for over a week, a prisoner was simply denied access to a medical professional competent to diagnose and treat his condition," and held "that this conduct rose to the level of a wanton disregard for Rodrigue's serious medical needs" in violation of the Eighth Amendment. As to Fife, it held that he "exhibited deliberate indifference to Rodrigue's medical condition when he ignored Rodrigue's inmate request of June 5, 2008." The court denied Grayson and Fife qualified immunity and held them jointly and severally liable to Rodrigue in the amount of $280,000 in general compensatory damages, $10,000 in court costs, and interest as allowed by law. Grayson and Fife appeal.

**STANDARD OF REVIEW**

"Following a bench trial, we review the district court's conclusions of law *de novo* and its factual findings for clear error." *DeMoss v. Crain*, 636 F.3d 145, 149 (5th Cir. 2011).  Clear error occurs "when, notwithstanding there is evidence to support it, the reviewing court upon examination of the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Justiss Oil Co. v. Kerr-McGee Ref. Corp.*, 75 F.3d 1057, 1062 (5th Cir. 1996).  "Where there are two permissible views of the evidence, the fact-finder's choice between them cannot be clearly erroneous." *Id*.

We review the district court's ruling on qualified immunity de novo. *See Terry v. Hubert*, 609 F.3d 757, 761 (5th Cir. 2010) ("[W]e may review *de novo* the materiality of disputed facts to the qualified immunity determination.").  This inquiry includes the scope of clearly established law and the objective reasonableness of the defendant's conduct. *Flores v. City of Palacios*, 381 F.3d 391, 394 (5th Cir. 2004); *Thompson v. Upshur Cnty.*, 245 F.3d 447, 456 (5th Cir. 2001).

**DISCUSSION**

Grayson and Fife raise three issues on appeal.  They argue that the district court (1) abused its discretion by failing to apply numerous stipulations entered into between the parties prior to trial; (2) erred in reaching its factual conclusions; and (3) erred in holding that appellants were not entitled to qualified immunity.  We address each challenge in turn.

I. Parties' Stipulations

As their first issue on appeal, Grayson and Fife argue that the district court found deliberate indifference only by ignoring and "eviscerating"

stipulations entered into between the parties before trial. Because "[s]tipulations entered into between parties are to be disregarded only if accepting them would be 'manifestly unjust or if the evidence contrary to the stipulation is substantial,'" *Smith v. Blackburn*, 785 F.3d 545, 549 (5th Cir. 1986), appellants contend that the district court abused its discretion by reaching a conclusion they argue is foreclosed by the stipulations set forth in the pre-trial order. We hold that the district court did not abuse its discretion because it neither ignored nor eviscerated any of the facts to which the parties stipulated.

The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. "A prison official violates the Eighth Amendment's prohibition against cruel and unusual punishment when his conduct demonstrates deliberate indifference to a prisoner's serious medical needs, constituting an unnecessary and wanton infliction of pain." *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006) (internal quotation marks and citation omitted). Actions by state actors constitute deliberate indifference towards a prisoner's medical needs when they "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006). But "an inadvertent failure to provide adequate medical care" does not rise to the level of "unnecessary and wanton infliction of pain" that is "repugnant to the conscience of mankind." *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976).

At issue are eighteen stipulations incorporated into a pre-trial order that appellants argue foreclose a finding of deliberate indifference. Relevant to our analysis are stipulations 8–15 and 18, which describe Rodrigue's various

6

requests for treatment to Grayson and Fife (including his description of symptoms), Grayson's treatment of Rodrigue, and one occasion when Fife escorted Rodrigue to the infirmary during the relevant time period.

We hold that despite appellants' assertions to the contrary, the district court did not ignore the parties' pre-trial stipulations. As demonstrated in its opinion, the district court accepted the parties' stipulations regarding the progress of Rodrigue's illness and treatment. It accepted that Grayson saw and treated Rodrigue after each of his requests for medical attention, and did not disregard the stipulation evidencing Fife's escorting Rodrigue to the infirmary.

The district court's factual findings that appellants take issue with are not inconsistent with the parties' stipulations. For example, the finding that Grayson was not credible when she testified that Rodrigue did not appear to be sick does not contradict any stipulated fact describing the inmate's requests and her treatment. The district court found that from "the plain wording of his emergency requests and sick calls, and from Dr. Sasaki's [Rodrigue's expert] medical opinion of the seriousness, symptoms, and progression of Rodrigue's illness that Rodrigue complained of pain to LPN Grayson and that he was obviously in serious pain from May 31, 2008 to June 10, 2008." Similarly, although the stipulations do not state that Rodrigue complained of vomiting, abdominal pain, constipation, and anorexia, the district court was within its right to find that, based on the testimony before it, Rodrigue did in fact complain of these symptoms, albeit verbally, to Grayson.

We hold that the district court did not commit reversible error by ignoring the parties' pre-trial stipulations. A comparison of the facts found in the district court's opinion and what parties stipulated to before trial reveals no error.

II. District Court's Factual Conclusions

Appellants argue that the district court committed manifest error in how it weighed competing evidence.  They argue:

> The plaintiff and the defendants presented markedly different evidence as to Rodrigue's appearance, symptoms, complaints and medical attention prior to his transfer to a hospital where he underwent surgery for a perforated appendix.  In reaching her factual conclusions, the district judge generally accepted all of the testimony presented by plaintiff and his witnesses, and rejected or simply ignored not only the testimony of the defendants' witnesses but also the documentary evidence of Rodrigue's treatment at the Detention Center for his abdominal complaints.

Appellants' Br. 1–2.  As the above excerpt demonstrates, appellants merely ask the court to second guess the district court's factual findings.  We hold that the district court did not commit manifest error in reaching its factual conclusions.

Appellants take exception to the district court's credibility determinations as to Grayson, Fife, and defendants' expert witness, Dr. Demaree Inglese.  The district court found Grayson lacked credibility based on her inconsistent and "rehearsed" answers, as well as her lack of remorse.  It questioned Inglese's impartiality based on the fact that he had worked at a correctional facility.  The court discredited Fife's testimony because "Lt. Fife testified shamelessly that he had no memory of receiving Rodrigue's inmate request and that he received '100's' of these requests daily, a figure he later modified to twenty-five or thirty."

We hold that appellants fail to demonstrate clear error in the district court's conclusions.  That a reasonable trier of fact could have weighed the evidence differently is not enough for an appellate court to overturn a district court's findings.  *See Justiss*, 75 F.3d at 1062 ("Where there are two permissible views of the evidence, the fact-finder's choice between them cannot be clearly erroneous.").  Consistent with the great deference given to trial courts' fact-

finding, we hold that the district court did not commit manifest error in reaching its factual conclusions. *See Strauch v. Gates Rubber Co.*, 879 F.2d 1282, 1285 (5th Cir. 1989) ("An appellate Court is in no position to weigh conflicting evidence and inferences or to determine the credibility of witnesses; that function is within the province of the finder of fact.").

Because the district court did not impermissibly ignore or disregard the parties' pre-trial stipulations or commit reversible error in reaching its factual conclusions, we affirm the district court's holding that appellants violated Rodrigue's rights under the Eighth Amendment.

III. Qualified Immunity

Appellants challenge the district court's denial of qualified immunity. Based on the district court's factual findings that Grayson and Fife knew of Rodrigue's serious medical condition but ignored his requests for medical attention despite this knowledge, we hold that appellants are not entitled to qualified immunity. Although case law protects medical providers for misdiagnoses and for treatments that can only be shown to have been deficient through hindsight, the district court explicitly found that both appellants had subjective knowledge that Rodrigue's medical condition carried significant risks of serious injury. Accepting these facts, no reasonable person would have thought it constitutionally permissible to deny him the medical care he required.

A. Legal Standard

State actors sued in their individual capacity under § 1983 are entitled to qualified immunity "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person

would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2085 (2011). "When properly applied, it protects all but the plainly incompetent or those who knowingly violate the law." *Id.* (internal quotations marks omitted). After the individual defendants invoked qualified immunity, the burden shifted to Rodrigue to demonstrate the inapplicability of the defense. *Crostley v. Lamar Cnty.*, 717 F.3d 410, 422 (5th Cir. 2013). We apply a two-pronged test in evaluating the applicability of the defense. The plaintiff "[f]irst . . . must claim that the defendants committed a constitutional violation under current law. Second, he must claim that the defendants' actions were objectively unreasonable in light of the law that was clearly established at the time of the actions complained of." *Id.*

Because we affirm the district court's holding that defendants committed a constitutional violation, *see supra* Sections I-II, we turn to the second prong of the qualified immunity test—whether the rights allegedly violated were clearly established at the time Grayson and Fife acted.

### B. Clearly Established

When applying the second prong of the qualified immunity test, we examine whether the right's "contours . . . are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *al-Kidd*, 131 S. Ct. at 2083 (internal alterations and quotation marks omitted). "To answer that question in the affirmative, we must be able to point to controlling authority—or a robust consensus of persuasive authority—that defines the contours of the right in question with a high degree of particularity." *Morgan v. Swanson*, 659 F.3d 359, 371–72 (5th Cir. 2011) (en

banc) (internal quotation marks and footnote omitted).  While "[w]e do not require a case directly on point . . . existing precedent must have placed the statutory or constitutional question beyond debate."  *al-Kidd*, 131 S. Ct. at 2083.  But "officials can still be on notice that their conduct violates established law even in novel factual circumstances. . . .  [T]he salient question . . . is whether the state of the law . . . gave respondents fair warning that their alleged treatment . . . was unconstitutional."  *Hope v. Pelzer*, 536 U.S. 730, 741 (2002); *see also Austin v. Johnson*, 328 F.3d 204, 210 (5th Cir. 2003) ("[O]fficers need only have 'fair warning' that their conduct is unlawful.").

Appellants contend that the district court erred in denying them qualified immunity because the judge conducted her inquiry into clearly established law "at too general a level."  They argue that "no reported opinion of this or any other federal circuit court . . . has ever equated similar acts or omissions to deliberate indifference."  Indeed, numerous authorities support the contrary proposition: "It is indisputable that an incorrect diagnosis by prison medical personnel does not suffice to state a claim for deliberate indifference."  *Domino v. Tex. Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001); *see also Estelle*, 429 U.S. at 105–06 ("in the medical context, an inadvertent failure to provide adequate medical care cannot be said to constitute 'an unnecessary and wanton infliction of pain' or to be 'repugnant to the conscience of mankind'").

We hold that Rodrigue's rights were clearly established.  The district court's factual findings distinguish this case from others that held that a mere misdiagnosis does not rise to the level of deliberate indifference.  As the district court explained in distinguishing *Domino*, Grayson and Fife knew of a serious medical condition and simply ignored it: "The prisoner [in *Domino*] had been treated for all of his complaints until he chose to discontinue the

11

treatment. . . .  In the instant case, the continuous and intense nature of Rodrigue's complaints of vomiting and abdominal pain were simply ignored by LPN Grayson."

Officials can be on notice that their conduct violates a constitutional right even in "novel factual circumstances." *See Hope*, 536 U.S. at 741.  Here, Grayson and Fife knew of a prisoner's serious medical needs yet ignored his requests for treatment.  The district court's factual findings—that appellants had subjective knowledge of Rodrigue's dire condition—remove this case from the realm of negligence or gross negligence, and render inapposite cases dealing with honest but inadequate medical care.  Any reasonable person in appellants' position would have known that ignoring Rodrigue's complaints in light of his medical situation would be a violation of his rights under the Eighth Amendment.  *See Gobert*, 463 F.3d at 346 (deliberate indifference when state actors "refused to treat [prisoner], ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs").

We affirm the district court's holding that appellants were not entitled to qualified immunity.

## CONCLUSION

For the foregoing reasons, we AFFIRM the district court's judgment in its entirety.